[No. 7,472.—Department Two.]

COLTON LAND AND WATER COMPANY *v.* P. A. RAYNOR ET AL.

PRACTICE — EVIDENCE — PLEADING. — A plaintiff may introduce upon the trial evidence of any fact which countervails or overcomes any new matter set up as a defense in the answer to the complaint. And the same rule applies to the answer to a cross-complaint.

FINDING.—A finding which describes certain property as "the property in question," may be read with and explained by an exhibit attached to the cross-complaint containing a description of the property.

PLEADING—ACCOUNT—EQUITY.

APPEAL from a judgment for the plaintiff, and an order denying a new trial, in the Superior Court of San Bernardino. County. SPENCER, J.

*Brunson & Wells*, and *J. D. Boyer*, and *Estee & Boalt*, for Appellants.

*Paris & Allen*, *E. T. Littlepage*, and *Bennett & Wigginton*, for Respondents.

THORNTON, J.:

A demurrer on various grounds was interposed to the amended cross-complaint of Raynor. We have examined this cross-complaint carefully, and we cannot perceive any error in the Court's overruling the demurrer to it. It states a case clearly demanding the interposition of the Court.

It is objected that the evidence allowed in regard to exhibit B was improperly admitted. The paper referred to is in these words:

"For value received, I hereby sell and assign to Wm. H. Mintzer, J. C. Peacock, W. R. Fox, and James Cameron, all my right and interest in the within instrument and contract.

"February 25th, 1876.                                    P. A. RAYNOR."

The instrument and contract referred to in this exhibit B was one executed by the aforesaid Mintzer, Peacock, Fox, and Cameron with one Ambrose Hunt, by which they agreed to reconvey to Raynor, on conditions therein named, certain lands, water rights, and privileges which on the previous day had been conveyed by Raynor to the parties just above named. In Raynor's

cross-complaint the facts in relation to the two papers last named were set forth, and he claimed that they were but a mortgage. On this, issue was joined, and the above-named Mintzer, Peacock, Fox, Cameron, and Hunt, in their answer to the cross-complaint, set up this last paper (exhibit B) as an absolute conveyance to them by Raynor.

The defendant Raynor was asked if any consideration was paid to him by the parties to whom this paper was executed. To this Raynor answered, "No." The testimony was objected to on the ground that the consideration was not denied in the pleadings. The Court overruled the objection, and there was an exception.

What force there can be in this objection we cannot perceive. The paper was only set up in the answer to the cross-complaint, at which stage, under our system, the pleadings terminate. No *replication* is required by our law of procedure. What opportunity did Raynor have to set up the want of consideration in a pleading? He was not called on *or allowed to reply* to the answer in which this document first made its appearance. But what the defendant could not do by an *actual* pleading the law does for him under the last clause of § 462 of the Code of Civil Procedure—" the statement of *any new matter* in the answer, in *avoidance* or constituting a *defense* or counter-claim, must, on the trial, be deemed controverted by the opposite party." This has always been regarded as allowing a plaintiff, in reply to such new matter, to introduce on the trial any evidence which countervails or overcomes it, as if it were inserted in a replication, and pleaded with all the precision and fullness which the strictest rules of law ever required. (*Curtiss* v. *Sprague*, 49 Cal. 301.) The same rule applies to the answer to the cross-complaint. (Code Civ. Proc. § 442.)

There is no error in the ruling referred to. The genuineness and due execution of the instrument was not at all impeached by the evidence admitted.

We see no ground for the criticism made by counsel for appellant as to finding 15. The words "the property in question," in the finding, are explained in the same finding by reference to exhibit B to the cross-complaint of defendant Raynor. This exhibit B, which is the deed of Mintzer, Peacock,

Fox, Hunt, Cameron, and Davis to the plaintiff, is a conveyance of the property referred to in the finding, which is described as being certain parcel, "less such portions thereof as have been heretofore sold and conveyed by the grantors or their predecessors in interest, and such parcels as are held and owned by any one of the grantors separately." As we read the finding, this conveyance to plaintiff (exhibit B) is incorporated in it, as much as if the whole description were inserted with the exceptions referred to. We cannot therefore see any soundness in the above-stated criticism of the finding.

The sixth conclusion of law is expressed in very general language, in which it is held that Raynor is entitled to have plaintiff convey to him an undivided four-sevenths of the land conveyed by Raynor to Mintzer and others, by the Raynor-Roe deed of the 12th of October, 1875, held to be a mortgage. But certainly the Court did not intend to have the plaintiff convey the parcels of land which it had sold and conveyed, and if it did so intend, no title to such parcels would pass under the decree or any conveyance made in pursuance of it. But when we come to the decree, certain exceptions are mentioned, out of the lands directed by the decree to be conveyed by plaintiff to Raynor. The Court might have determined or had ascertained by reference, the specific lots of land remaining unsold, and decreed that such lots be conveyed to Raynor, but we cannot see that the appellants are prejudiced by the decree as drawn, since no more can pass by any deed made under it than what remains unsold.

The items of expenditure (in finding 18) on the lands conveyed to the Western Development Company, and the rents and profits thereof, did not enter into the account at all, and there was no error in the Court in excluding such items from the account. The lands referred to were conveyed by Raynor and his co-tenants to the Western Development Company long before the Raynor-Roe deed. The interest of Raynor in the contract with the Western Development Company was conveyed to Mintzer and others, but this was a different matter from the lands conveyed to this company. This contract is as follows: The Western Development Company covenanted and agreed, in consideration of a conveyance to it by Raynor, Mintzer, Pea-

cock, Fox, Cameron, and Hunt, of 604 acres of land, a portion of the San Bernardino ranch, for town site purposes, to pay to said parties just above named (Raynor and others), in quarterly payments, one-half of the net proceeds of the sale of lots on the town site located on the tracts conveyed to said company; it being, however, agreed that the actual cost of surveys, map-making, publishing, advertising, and printing, with sums paid for taxes and street assessments on said land, shall first be deducted from the moneys received for the sale of said lots, the balance to constitute the net proceeds. Whether the evidence was sufficient to justify finding 18 need not be considered, inasmuch as this finding relates to the expenditures and rents just above mentioned, which are entirely outside of any issue. These matters may form a part of a settlement of accounts between the parties above mentioned (Raynor, Mintzer, and others) and the Western Development Company, but we cannot see that they come into this account.

The position that the judgment rendered in this action could not be rendered on the pleadings, cannot be sustained. The plaintiff's complaint against Raynor, as sole defendant, sets forth that it is and has been a corporation ever since the 4th day of January, 1877; that on the 17th day of April, 1875, Raynor and Mintzer, Peacock, Fox, Cameron, and Hunt were owners as tenants in common of certain lands situate in San Bernardino County, which said lands were incumbered by a mortgage of date 23rd of May, 1874, to one Conn, as security for the payment of two notes for $2,300 each, one maturing on the 11th day of December, 1874, and the other on the 11th day of December, 1875. That on the 17th of April, 1875, the above-named tenants in common conveyed a part of the lands first above mentioned to the Western Development Company, at the same time taking back the agreement hereinafter mentioned from the Western Development Company; that Raynor's interest in the said lands is a four-sevenths undivided part, and his liability in regard to them in the same proportion; that at the time the first note to Conn matured all paid except Raynor, who has never paid or offered to pay any portion of it; that on the 12th of October, 1875, Raynor agreed to convey to his said co-tenants all his interests in said lands, and everything held by

him and his co-tenants in common, whether real or personal, including the interest held by him in common with the co-tenants above named in and under the said deed and agreement with the Western Development Company, on their agreeing to assume and pay off all the amounts due or to become due to Conn; and thereupon, in order to effect the intention of the parties, Raynor, by Roe, his attorney in fact, executed to the said co-tenants a conveyance of his interest in the lands aforesaid, but by mistake the conveyance did not specifically mention the interest of Raynor in the said agreement with the Western Development Company, as was intended by the parties to have been done; that on the 17th day of January, 1877, the said co-tenants other than Raynor, with one J. W. Davis, the owner of a mortgage thereon, conveyed to plaintiff all the property above described, with all their interest in the agreement with the Western Development Company; that the old grantors performed all the conditions on their part to be performed in the contracts and transactions between them and Raynor; that Raynor claims that he has an interest in the agreement with the Western Development Company, and a right to a portion of the profits received and to be received therefrom, and that he also has some interest in the lands, water rights, etc., aforesaid, and that he is insolvent. The prayer of the complaint is that it be adjudged that Raynor has no right or title in and to any of the property, rights, or agreements aforesaid, or moneys or profits to be received from the Western Development Company, and that plaintiff is the sole owner of all the above, and, "if the Court deem it proper that the conveyance of October 12th, 1875 (called herein the Raynor-Roe deed), be re-formed so as more clearly to express the intention and contract of the parties aforesaid," and for an injunction.

The defendant Raynor, by his amended cross-complaint, which was filed against plaintiff, and Mintzer, Peacock, Fox, Hunt, and Cameron (the five last-named persons having been made parties to the action by order of the Court dated August 5th, 1878), set up certain equities against the parties just mentioned, which entitled him, if established by proof against the parties above, to relief, to an account, and to a reconveyance of the lands remaining unsold, in which he was interested. These

matters related to and were connected with the subject of the action as set forth in the complaint, and were the proper subject of a cross-complaint.   They affected the property to which the action related, and related to the transaction on which the action was brought.   (Code Civ. Proc. § 442; 2 Daniel's Ch. Pr. § 1548, *et seq.*; Pomeroy's Rem. and Rem. Rights, §§ 734, *et seq.*, 749, *et seq.*, and cases cited in notes; Story's Eq. § 389, *et seq.*, and cases cited.)   The Court adjudged that these equities were established, and granted the relief to which they showed Raynor was entitled.   In effect, the Court held that the equities above alluded to existed in favor of Raynor against the parties referred to; that the plaintiff was not entitled to the relief which it asked, inasmuch as the facts set forth in the cross-complaint, and proved by the testimony, established rights in Raynor which countervailed any claim to a decree which the plaintiff ever had.   That the matters set forth in the cross-complaint justified a resort to such a remedy, we cannot see any room to doubt.   (See the works just above cited, and the following cases; *Leavenworth* v. *Parker*, 52 Barb. 132; *Gleason* v. *Moen*, 2 Duer, 639; *Boston S. & W. Mills* v. *Eull*, 37 How. Pr. 289; S. C. 6 Abb. Pr. N. S. 319; 1 Sweeny, 359.) The judgment rendered in this action was a proper one under the pleadings, the facts alleged having been established by proof.

In our opinion, the findings are sustained by the evidence. They establish a case of plain and palpable fraud on the rights of Raynor, attempted to be carried out by means of the cloaked machinery of a corporation—a common resort in these days to accomplish a fraud; a course of conduct which deserves and should receive, on every occasion when it appears before it, the rebuke of every department of the Government, and unstinted public and private censure and condemnation.   For an instance of such an attempt to carry out a fraud, see *Wardell* v. *Union Pacific R. R. Co.*, recently decided (Oct. Term, 1880) by the Supreme Court of the United States, opinion per Field, J.

We find no error for which the ruling of the Court below should be reversed; but the general language of the decree should be modified so as to add to the exceptions in it of lands not to be conveyed the following words: " There shall be and

is included in this exception all of the above-described lands sold by the aforesaid Mintzer, Fox, Hunt, Peacock, and Cameron, subsequent to the execution of the deed of the 12th day of October, 1875, made by Raynor to the aforesaid Mintzer, Fox, Hunt, Peacock, and Cameron, and such of said lands sold by the plaintiff since the execution of the deed to it by the parties just named, the purchase-money of all of which sale or sales has been accounted for in this action." With this modification, the judgment, being otherwise correct, is affirmed, as is the order denying a new trial.

MYRICK, J., and SHARPSTEIN, J., concurred.